UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| JERROD DUANYA FULLER, § | |
| § | |
| Petitioner, § | |
| VS. § | CIVIL ACTION NO. 3:12-CV-47 |
| § | |
| RICK THALER, § | |
| § | |
| Respondent. § | |

**MEMORANDUM AND ORDER**

Petitioner Jerrod Duanya Fuller filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his 2009 conviction of possession of a prohibited item in a correctional facility, enhanced by a prior conviction for attempted murder. After considering the pleadings and the record, the Court dismisses this case for the reasons discussed below.

I.   **BACKGROUND**

Fuller was convicted in the 23rd District Court of Brazoria County, Texas. *The State of Texas v. Jerrod Duanya Fuller aka Jerry Fuller*. Fuller was indicted for possession of a cell phone in a correctional facility, enhanced by a prior conviction for attempted murder. He pled not guilty but on June 17, 2009, was found guilty by a jury and sentenced to six years imprisonment.

Fuller filed a timely notice of appeal and the Fourteenth Court of Appeals affirmed his conviction in a published opinion on February 1, 2011. *Jerrod Duana Ferguson AKA Jerry Fuller v. State*, 335 S.W. 3d 676 (Tex. App. — Houston, Feb. 1, 2011). He did not file a petition for discretionary review. Fuller filed a state application for writ of habeas corpus, which was denied by the Texas Court of Criminal Appeals on September 14, 2011. Fuller placed the instant petition in the prison mail on February 7, 2012. (Doc. No. 1 at 10).

## II.  FACTUAL BACKGROUND[1]

Major Calvin Tucker of the Darrington Unit of the TDCJ testified that on March 14, 2007, he attempted to conduct a routine search of appellant's cell and person. Appellant's cell mate was sleeping, but Fuller was awake and at the rear of the cell.  Major Tucker asked Fuller to consent to a strip search; Fuller refused. Major Tucker then asked another TDCJ employee to open the door to Fuller's cell, which she did.  At this point, Fuller's cell mate woke up and consented to a strip search, which Major Tucker conducted.  Fuller then appeared to consent to the search by taking off his shirt and handing it to Major Tucker, who was standing in the cell doorway.  Major Tucker searched the shirt and attempted to return it to Fuller.  At that point, Fuller tried to shut the cell door on Major Tucker.  Major Tucker pushed back and stepped into the cell; fuller responded by punching Major Tucker in the face.  Major Tucker struck Fuller in response. Eventually Fuller lay down on the bed, where Major Tucker handcuffed him and walked him to the cell door.

Major Tucker then handed off Fuller to two other officers who took him to the infirmary.  One of the TDCJ officials who escorted Fuller to the infirmary was Lieutenant Steven Kelly.  Lieutenant Kelly testified he took Fuller to the infirmary to check for any injuries, pursuant to policy after a "force incident" occurs.  The entire medical examination and subsequent search was videotaped. The TDCJ requires the video camera remain trained on the inmate the entire time. After the medical examination, Lieutenant Kelly also took still photos of Fuller to document any injuries.

Lieutenant Kelly next strip searched Fuller.  To do so, he first searched a "dry cell" next to the infirmary and then placed Fuller in it.  A dry cell is an empty room with a cell door.  It does not have any plumbing or furniture.  Lieutenant Kelly noted the actions he took for the video camera, stating that he searched the cell, but there is no video of the cell because the camera was required to remain on Fuller.  Fuller then consented to a strip search.  Lieutenant Kelly testified that when appellant removed his shorts and underwear, he say an object fell "to the floor."  At the same time, Fuller placed an item in his mouth and swallowed it. The item was never identified, but Fuller first stated the item was Prozac and later declared the item was Tylenol.  The video camera did not record the object on the floor because it fell outside its range.

Lieutenant Kelly testified he examined the object and found it was a gray sock, knotted on the end.  Inside, he found a cell phone encased in a toilet paper tube. Lieutenant Kelly testified he turned over the phone, sock and toilet paper tube to Officer Chris Cegielski, an investigator at TDCJ.  Officer Cegielski testified that he examined the items and found no fingerprints on the phone.  When he tried to turn the phone on, the SIM card was missing, so he could not tell if any calls were made.

---

[1] As summarized by the Texas court of appeals.

Fuller cross-examined the prosecution witnesses, attempting to show a culture of corruption within the prison. He also presented two inmate witnesses who, it appears, were called to suggest that the cell phone was planted by corrupt prison officials. The trial court prevented much of their testimony upon objections by the prosecution. Fuller did not testify in his own defense.

The jury deliberated, but twice told the trial judge it was unable to reach a verdict. After the second time, the trial judge gave the jury an Allen charge and asked them to continue deliberating. The jury returned with a verdict of guilty.

During the punishment phase, the prosecution called additional witnesses. These witnesses testified that the cell phone was not the first piece of contraband Fuller had possessed in prison. He had previously possessed $100 in cash, ten marijuana cigarettes, and another cell phone. Fuller cross-examined them, but only asked each witness if, after the items were confiscated, whether he caused the witness personally "any other problems." Each witness answered no. The trial judge asked both parties if they had read and agreed to the punishment phase jury charge, and each answered yes. The punishment range for the offense was an enhanced sentence of between two and twenty years for the offense and up to a $10,000 fine. The jury deliberated and sentenced Fuller to six years. imprisonment and no fine.

### III. FULLER'S CLAIMS

Fuller raises the following claims:

1. He was denied the mandatory preparatory period prior to his arraignment hearing;

2. His right to equal protection was violated when he was denied his request for a transcription of the arraignment and all pre-trial proceedings; and

3. The indictment failed to allege his true name in violation of the Sixth Amendment and the Texas Constitution.

### IV. STANDARD OF REVIEW

The Court reviews Fuller's petition under the federal habeas statutes as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). 28 U.S.C. § 2254. When a state court has adjudicated a claim on the merits, federal habeas relief cannot be granted unless the state court decision (1) was contrary to clearly established federal law as determined by the

United States Supreme Court; (2) involved an unreasonable application of clearly established federal law; or (3) was based on an unreasonable factual determination in light of the evidence presented. *Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 785 (2011); *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court, or if it confronts a set of facts that are materially indistinguishable from such a decision and arrives at a result different from the Supreme Court's precedent. *Early v. Packer,* 537 U.S. 3, 7-8 (2002). A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *Id*. at 411.

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. §2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal court must presume the underlying factual determination of the state court to be correct unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller-El*, 537 U.S. at 330-31.

V.  **DISCUSSION**

   A.  <u>The claim that the indictment failed to allege Fuller's true name in violation of the Sixth Amendment and the Texas Constitution</u>

The respondent notes at the outset that this claim was not properly presented in state court and is thus unexhausted and barred by the doctrine of procedural default. The state court records confirm this.

The federal habeas corpus scheme of review requires petitioners to first present their claims in state court and to exhaust all state court remedies through proper adjudication on the merits. *See* 28 U.S.C. § 2254(b). "To satisfy the exhaustion requirement, the petitioner must fairly present the substance of his federal claim to the highest state court." *Ries v. Quarterman*, 522 F.3d 517, 523 (5th Cir. 2008). If a claim has not been adjudicated on the merits in state court, federal review is procedurally barred if the last state court to consider the claim expressly and unambiguously based its denial of relief on an independent and adequate state-law ground. *Coleman v. Thompson,* 501 U.S. 722, 729 (1991); *Lee v. Kemna*, 534 U.S. 362, 375 (2002). The doctrine of procedural default also prevents habeas review when a petitioner has failed to meet state procedural requirements for presenting his federal claims, thereby depriving the state courts of an opportunity to address those claims in the first instance. *See Coleman*, 501 U.S. at 732 (noting that, "[w]hen a petitioner fails to properly raise his federal claims in state court, he deprives the State of 'an opportunity to address those claims in the first instance' and frustrates the State's ability to honor his constitutional rights").

The record reflects that Fuller did not raise this claim in either a petition for discretionary review or state habeas application. His failure to do so deprived the state court of the opportunity to consider the claim or make appropriate findings. As a result, this claim was not

exhausted or adjudicated on the merits in state court. *See Cone v. Bell*, — U.S. —, 129 S.Ct. 1769, 1780 (2009).

Fuller provides no explanation for his failure to raise this claim. It is well established that "[i]f a petitioner fails to exhaust state remedies, but the court to which he would be required to return to meet the exhaustion requirement would now find the claim procedurally barred, then there has been a procedural default for purposes of federal habeas corpus relief." *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2000)(citing *Coleman*, 501 U.S. at 735 n.1, and *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995). Fuller's unexhausted claim could have been raised in his state habeas corpus application. Accordingly, a successive petition would be barred by the Texas abuse-of-the-writ statute. *See* TEX.CODE CRIM. PROC.ANN. art. 11.07, § 4(a). Because Texas would likely bar another corpus application by the petitioner on this subject, this default represents an adequate state procedural ground which, in turn, bars federal review of his claim unless an exception applies. *Finley*, 243 F.3d at 220 (citing *Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir. 1995)).

Where a petitioner has procedurally defaulted on a claim in state court, federal habeas corpus review is available only if he can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law," or (2) that "failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. The Supreme Court has explained that "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753. Actual prejudice requires a showing that, based on the success of the underlying

defaulted claim, the result of the proceeding would somehow have been different. *See Barrientes v. Johnson*, 221 F.3d 741, 769 (5th Cir. 2000).

Fuller has not shown that the fundamental-miscarriage-of-justice exception applies in this case. Nor has he attempted to show cause for his default. Even if Fuller were to establish cause, he does not demonstrate the requisite prejudice in that he does not allege or show that his underlying defaulted claim would have been successful. *See Barrientes*, 221 F.3d at 769. Because Fuller fails to meet an exception to the doctrine of procedural default, this claim is barred from further review and must be dismissed.

      B.      <u>The claim that Fuller was denied the requisite preparatory time for his arraignment proceeding</u>

Fuller asserts that he was denied the mandatory ten-day preparation period to gather relevant information and research applicable case law for his arraignment proceeding, in violation of the Equal Protection Clause. A federal court may grant relief when a petitioner is held in custody pursuant to a judgment of a state court on the ground that he is in custody in violation of the U.S. Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). Federal courts will not review a state court's interpretation of its own law in a federal habeas corpus proceeding. *Cook v. Morrill*, 783 F.2d 593 (5th Cir. 1986). Insofar as the foundation of this claim rests on the proper interpretation and application of state law, this issue does not lie within the scope of federal habeas corpus.

Second, the question of whether the Equal Protection Clause of the Fourteenth Amendment has been violated arises when a state grants a particular class of individuals the right to engage in an activity yet denies other individuals the same right. Fuller has pleaded no facts to prove that he was denied the statutory time for preparing a response or that he was treated differently than other defendants. This claim has no merit.

### C.     The claim that Fuller was denied portions of the trial transcript

Fuller alleges that he was denied a complete and accurate "statement of facts," including his arraignment proceeding, pre-trial testimony and trial transcripts. Although this claim was addressed by respondent, this Court can find no indication that this claim was presented to the state habeas court. If that is the case, this claim is subject to dismissal for the reasons set forth in section V(A), above.

"An indigent habeas petitioner is not entitled to a free copy of his trial transcript and records to search for possible trial defects merely because he is an indigent." *Johnson v. Johnson*, 194 F.3d 1309, 1999 WL 767047, *1 (5th Cir. 1999); *see also*, *Deem v. Devasto*, 140 F. App'x 574, 575 (5th Cir. 2005) ("[T]here is no constitutional mandate that a habeas petitioner must be provided a free copy of his state habeas trial record."). *United States v. Herrera,* 474 F.2d 1049 (5th Cir. 1973) ("This Court has consistently held that a federal prisoner is not entitled to obtain copies of court records at the government's expense to search for possible defects merely because he is an indigent."). An indigent petitioner is only entitled to a free copy if he set forth facts showing that it is necessary for a fair adjudication of at least one of his claims. *See Smith v. Beto*, 472 F.2d 164, 165 (5th Cir. 1972) ("[T]he petitioner has not shown that the district court erred in holding that he had not demonstrated a need for the trial transcript in proving a denial of effective counsel."). Fuller fails to articulate any facts in his petition which show that denial of a copy of the record prevented him from presenting an actionable claim. This claim must be dismissed.

D. <u>The claim of an error in the indictment</u>

In his final claim, Fuller alleges that he apprised the trial court of his true name and the court ordered an amendment to the indictment, changing it from Jerry Fuller to Jerrod Duanya Ferguson. This claim was addressed by the State appellate court, and the court noted:

> Most filings in this case have been styled "Jerrod Duanya Ferguson aka Jerry Fuller. Furthermore, appellant acknowledged he uses both names. ...Witnesses referred to appellant as "Jerry Fuller" without any comment or objection from appellant. Thus, this court concludes appellant is known by more than one name. Under the Texas Code of Criminal Procedure, if "a person is known by two or more names, it shall be sufficient to state either name" in the indictment. § 21.07. Appellant acknowledged and acquiesced to the use of the name "Jerry Fuller." Further, the trial court issued the order amending the indictment. Consequently, the indictment is valid and appellant's third point of error is overruled.

The appellate court's opinion on this issue, as the last reasoned state court opinion, is entitled to deference. "A federal habeas court 'will not consider a claim that the last state court rejected on the basis of an adequate and independent state procedural ground.'" *Busby v. Dretke*, 359 F.3d 708, 718 (5th Cir. 2014). Even if this claim was not procedurally barred, the Court should nevertheless dismiss it as meritless because the "[t]he sufficiency of a state indictment is not a matter for federal habeas relief unless it can be shown that the indictment is so defective that it deprives the state court of jurisdiction." *McKay v. Collins*, 12 F.3d 66, 68 (5th Cir. 1994) (citing *Morlett v. Lynaugh*, 851 F.2d 1521, 1523 (5th Cir. 1988). The indictment in Fuller's case was sufficient to vest jurisdiction in the trial court; thus, any defect in the indictment is substantive, not jurisdictional, and Fuller would not be entitled to habeas relief.

VI. **CERTIFICATE OF APPEALABILITY**

Under 28 U.S.C. § 2253, a petitioner must obtain a certificate of appealability before he can appeal the district court's decision to dismiss his petition. This Court will grant a certificate of appealability only if the petitioner makes a "substantial showing of the denial of a

constitutional right." 28 U.S.C. § 2253(c)(2). In order to make a substantial showing, a petitioner must demonstrate that issues are debatable among jurists of reason; that a court could resolve the issues in a different manner; or that the questions are adequate to deserve encouragement to proceed further. *Lucas v. Johnson*, 132 F.3d 1069, 1073 (5th Cir. 1998). For the reasons stated in this Memorandum and Order, Isenberger has not made a substantial showing of the denial of a constitutional right. *Newby v. Johnson*, 81 F.3d 567, 569 (5th Cir. 1996). The Court will deny the issuance of a Certificate of Appealability.

**VII. CONCLUSION**

For the reasons discussed above, the Court **ORDERS** the following:

1. This case is **DISMISSED** with prejudice.

2. A Certificate of Appealability is **DENIED**.

3. All pending motions, if any, are **DENIED.**

SIGNED on this 31st day of March, 2015.

_____
Kenneth M. Hoyt
United States District Judge